# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AINSLEY HOUGHTALING and MICHELLE VINSANAU, individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. _____** |
| CARTER'S INC. | ) | |
| Defendant | ) | **COMPLAINT-CLASS ACTION** |
| | ) | <u>**JURY DEMAND**</u> |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, Ainsley Houghtaling and Michelle Vinsanau ("Plaintiffs"), individually and as representatives of the class defined herein (the "Class"), bring this action against the defendant, Carter's Inc. ("hereinafter "Carter's" and/or Defendant") and aver as follows:

## <u>NATURE OF THE ACTION</u>

1.     This class action is a breach of contract claim on behalf of all United States Carter's customers who return merchandise purchased at Carter's stores pursuant to the Carter's return policies, but to whom Carter's refunds less than the amount paid.  Plaintiffs allege that Carter's systematically shortchanges customers who return products to a store by failing to refund the full amount of the sales tax, rather than the amount actually paid by customers, including Plaintiffs. Upon information and belief, Carter's has the capability of calculating the correct sales tax refund amount, as other major retailers do, but it does not.  Defendant's failure to refund the entire sales tax breaches the sale contract with the customers who are shortchanged.

## PARTIES

2.      Defendant Carter's is a Delaware corporation with its principal place of business at 1170 Peachtree St. NE, Ste. 900 Atlanta, Georgia, 30309.  Carter's Inc. is one of the largest branded marketers of apparel and related products for infants and children in the United States.  Carter's owns the "Carter's" brand, one of the most recognized brands in the country.

3.      The named Plaintiffs are Louisiana residents who purchased, whether in-store or online, products from Carter's stores, returned the product pursuant to the contractual terms of Carter's return policies, and were refunded by Carter's less than the full amount of sales tax paid.

4.      All members of the putative Class are United States residents who purchased, whether in-store or online, a product from Carter's stores, returned the product pursuant to the contractual terms of Carter's return policies, and were refunded by Carter's less than the full amount paid, as a result of Carter's failing to refund the amount paid on the sales tax (as reflected in the customers' purchase receipt).

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Carter's.

6.      Venue is proper in the Eastern District of Louisiana, pursuant to 28 U.S.C. § 1391, because Carter's is subject to personal jurisdiction there, regularly conducts business in that district through both online sales and by operating retail Carter's stores, and a substantial part of the events or omissions giving rise to the claim asserted herein occurred and continue to occur in that district.

## FACTUAL ALLEGATIONS

7.      According to Carter's website, Carter's is the largest branded marketer in the United States and Canada of apparel and related products exclusively for babies and young children.

8.      Carter's owns the *Carter's* and *OshKosh B'gosh* brands which Defendant touts as two of the most recognized brands in the marketplace.

9.      Carter's operates and sells its products through nearly 1,000 Carter's owned stores in the United States and Canada and on-line at www.carters.com, www.oshkosh.com, and www.cartersoshkosh.com

10.     Carter's sells products to thousands of customers a day.

11.     Every day, Carter's promises its customers they can return products purchased, within a set timeframe, for a full refund of the amount paid.

12.     Carter's has a nationwide return policy for both its retail locations and on-line sales that provides Carter's customers rights as part of the sale of products from their retail stores and on-line sales.

13.     Plaintiffs and Carter's customers expect and understand that the terms of the return policies are part of the sale contract for goods purchased whether directly on-line or from one of Carter's retail locations.

14.     The return policies for Carter's provide that customers may return a product with or without a receipt to either defendant's retail or outlet stores or purchased on-line to receive a full refund of the amount paid.

## CARTER'S RETURN POLICIES

15.     Carter's provides a "Happiness Policy" that states that if a customer is not happy with a purchase, Carter's nationwide return policy provides that customers can return products within a certain timeframe (90 days of the date of sale for most products) and receive a full refund of the amount paid.

16.     Carter's publicizes these terms on marketing, on its website, in-store displays and placards, and through sales associates.  *See* Carter's Return Policy at http://www.carters.com/cs-returns.html and displayed below.

# RETURNS

Return you online order by mail and print your prepaid return label using our interactive return tool. You will need your order number, email, and zip code.

**START RETURN**

## Happiness Policy

Not happy with it? Return it. It's easy! If you are not completely satisfied with your purchase, you may return it with your original sales receipt, gift receipt or original packing slip. We will happily exchange the item or

refund your ***full purchase price*** if returned within 90 days of purchase, less shipping and handling for online orders, for all new, non-worn product. If you don't have your receipt, or it has been longer than 90 days since your purchase, we will exchange the item for current selling price. For your convenience, we accept returns for items purchased online by mail and also at any Carter's or OshKosh B'gosh retail or outlet store in the United States, details below.

## In-Store Returns or In-Store Exchanges

Any item purchased at a Company-owned Carter's retail or outlet store, along with eligible Carter's and Skip Hop items purchased online (those not marked 'Return by Mail only'), may be returned or exchanged at any Company-owned Carter's retail or outlet store in the U.S. Make sure to take your original sales receipt, gift receipt or packing slip, and the credit card used for your original purchase.

## Refunds with an Original Sales Receipt, Gift Receipt or Packing Slip

We will happily refund the original purchase price for any **new, non-worn** item returned or exchanged with an original sales receipt, gift receipt or packing slip, returned within 90 days of purchase. After 90 days, items may be returned for current selling price in the form of a merchandise credit or merchandise exchange Refunds for purchases made by credit card may only be credited back to the original card used.

## Returns or Exchanges Without an Original Sales Receipt or with an Original Sales Receipt paid with a merchandise credit

For the return of items purchased in one of our Company-owned stores in which you do not have a receipt, Carter's and OshKosh B'gosh can look up the original purchase transaction using your Rewarding Moments information, physical address or email address. If the transaction is located, it will be processed as a return with a receipt. If we are unable to locate your receipt, we will be happy to offer a merchandise exchange at the current selling price.

## Price Adjustments

A one-time price adjustment for items purchased will be honored if you call us within 14 days of purchase. Please call us at 877-333-0117 (toll free) or 972-265-4128 from 7am-12am EST daily (except holidays) for assistance. You may also receive a price adjustment in Carter's and OshKosh B'gosh Company-owned stores within 14 days or purchase in-store or online. Please have your receipt available.

## Defective Products

Carter's, OshKosh B'gosh and Skip Hop are committed to providing you with quality products. Any Carter's or OshKosh B'gosh product with a quality defect can be returned to a store for a ***full refund*** or exchange (please bring the packing slip or printed receipt). You may also contact our Consumer Affairs department at 888-782-9548 Monday-Friday 8am-4:30pm CST to make arrangements to return the item to us by mail.

For any Skip Hop product with a quality defect, please fill out and submit this <u>form</u>. You can also email us at <u>customerservice@skiphop.com</u>.

## Online Returns and Exchanges

For the fastest return processing, review our complete return policy and prepare your return label using our interactive return tool online at www..com/returns. Complete the form on the reverse side of your packing slip, and enclose it with your merchandise. Mail your shipment to:

carters.com | OshKosh.com
Attn: Returns Processing
625 Braselton Parkway
Braselton, GA 30517

*Note: we cannot process returns purchased from our retail stores by mail.*

Once we receive shipment, we'll issue a credit in your original form of payment, less adjustments for shipping and handling. By using the prepaid return label, $6 will be deducted from your refund.

For exchanges it will be necessary for us to process your exchange as a refund and reorder. For fastest service, please contact us at 877-333-0117 to place your reorder and we will waive the regular shipping charge. When we receive your return, we will credit you at the time. If applicable, prepaid label fees apply.

| I need to return: | You may return it: | Cost |
|---|---|---|
| Carter's or OshKosh B'gosh clothing and accessories purchased online | Using FedEx Ground by printing your pre-paid return label | To make a return as easy as possible, print your prepaid return label using our <u>interactive return tool</u>. You will need your order number, email, and zip code. If you use our pre-paid label, the shipping cost ($6) will be deducted from your return credit. |
| | By sending the package back on your own using UPS, USPS, or | You are responsible for cost of return. |

| | | |
|---|---|---|
| | Fedex (we recommend you use tracking or delivery confirmation to make sure your package arrives) | |
| | Carter's items may be returned to any company-owned US Carter's store; OshKosh B'gosh items may be returned to any company owned US OshKosh B'gosh store. | No cost |
| Orders Shipped Internationally | Please call us to issue a return authorization at 762-232-1399 from 7am-12am EST daily | |

[Bolded, underlined, italicized emphases added.]

17.     As set forth above, Carter's promises its customers they may return the purchase with the original sales receipt, gift receipt or original packing slip and be refunded the "full purchase price" if returned within 90 days of purchase, less shipping and handling for on-line orders, for all new, non-worn product.

18.     The contract terms created from this policy are that, in exchange for the customer paying for the goods:

a.      Carter's will allow customers or gift recipients to return all new or non-worn products for a full refund within 90 days of purchase.

b.      If the customer or gift recipient decides to reject the goods (that is, "return" them), Carter's will accept return of the goods, in exchange for a refund of the amount

paid, or exchange of the product, at the customer's choice, without regard to the reason the goods were rejected.

## CARTER'S SYSTEMIC BREACH OF ITS SALES CONTRACTS WITH CUSTOMERS

19.     Carter's systematically breaches its sales contract with its customers at Carter's stores by refunding less than the amount paid.  When a Carter's customer exercises their contractual right to return a product in exchange for the full refund of the amount paid, Carter's fails to refund the customer for the full amount of the sales tax paid by customer in the original purchase.

20.     Plaintiffs do <u>not</u> allege any claims regarding Carter's application, calculation, or collection of sales tax at the time of the initial sale.

21.     Plaintiffs do <u>not</u> allege any claims regarding transactions in which the calculated amount paid is higher than the actual amount paid.

## CLASS PLAINTIFFS' FACTS

### AINSLEY HOUGHTALING

22.     On November 9, 2016, Plaintiff Ainsley Houghtaling purchased nine clothing items from Carter's on-line website, www.carters.com, for a merchandise total of $149.00 with a promotional discount of $33.15 and an estimate Sales Tax of $11.39, for a final sale of $128.23.

23.     On November 29, 2016, Plaintiff Ainsley Houghtaling returned three of the unused clothing items, Zip-Up Sweaters, (Item Number 0889338179714, Item Number 0889338179707 and Item Number 08889338192577) to a Carter's store located at 1200 South Clearview Parkway, Harahan, Louisiana (Store # 00897).

24.     Plaintiff performed an even exchange for two of the items and returned a third item to Carter's.  Although Plaintiff had paid the full purchase price of $14.25 for the item plus an estimated sales tax, Houghtaling was only refunded $11.91, (i.e., $14.25 minus a calculated sales tax of $2.24), or $2.34 less than the amount paid.   Despite her protests to Carter's employees and managers, Carter's refused to refund the entire amount paid for the item.

25.     As part of the individual contracts for sale of the products in these transactions, Plaintiff Ainsley Houghtaling was entitled to return the products within 90 days of purchase for Carter's stores with receipt and original packaging, under which circumstances Carter's was contractually obligated to refund the total amount paid.

26.     Plaintiff Ainsley Houghtaling complied with all the terms of the Carter's store return policies in making the returns, and Defendant Carter's breached the sales contract by failing to return the full purchase price of the items.

## MICHELLE VINSANAU

27.     On December 20, 2016, Plaintiff Michelle Vinsanau purchased three items from Carter's on-line website, www.carters.com, for a merchandise total of $36.00 and an estimate Sales Tax of $3.51, for a final sale of $39.51.

28.     On December 29, 2016, Plaintiff Michelle Vinsanau returned the three items to a Carter's store located at 1200 South Clearview Parkway, Harahan, Louisiana (Store # 00897).

29.     Although Plaintiff Vinsanau paid the full purchase price of $36.00 plus an estimated Sales Tax of $3.51, Plaintiff Michelle Vinsanau was only refunded $36.00.  Plaintiff protested to Carter's employees and managers that the Sales Tax was not refunded.

30.     The Carter's manager attempted to manually correct this mistake but was only able to refund $.01 in Sales Tax for each item returned.

31.     As part of the individual contracts for sale of the products in these transactions, Plaintiff Michelle Vinsanau was entitled to return the products within 90 days of purchase for Carter's stores with receipt and original packaging, under which circumstances Carter's was contractually obligated to refund the total amount paid.

32.     Plaintiff complied with all the terms of the Carter's store return policies in making the returns, and Defendant Carter's breached the sales contract by failing to return the full purchase price of the items.

## **CLASS ACTION DEFINITION**

33.     Class treatment is appropriate in this case, and Plaintiffs Ainsley Houghtaling and Michelle Vinsanau bring this class action individually and on behalf of all other similarly situated, who are members of the following class (the "Class") pursuant to Federal Rules of Civil Procedure Rule 23:

34.     The class should be defined as:

> **All persons who purchased products from either a United States Carter's store, or on-line from defendant Carter's for United States delivery, and to whom Carter's failed to give a full refund or credit for sales tax on returned products.**

35.     Excluded from the Class are:

a.      the officers and directors of any of the Defendants;

b.      any judge or judicial officer assigned to this matter and his or her immediate family

c.      any legal representative, successor, or assign of any excluded person or entities.

36.      The Class should be certified and each Class member should be compensated in a manner that will put the Class member in a position the member would have been in had Carter's not breached the contract.

37.      In cases where the amount of qualifying transactions is ascertainable, but the identity of the person returning the product is not, the funds should be allocated to an appropriate consumer advocacy organization under the *cy pres* doctrine.

## **NUMEROSITY**

38.      Each Class member has been damaged in a relatively modest amount, making individual actions impracticable.

39.      There are thousands of Carter's customers purchasing products every day from the Defendant, and over the course of a single year, many thousands who return products.

40.      Even if just one customer per store per year returned a product and was given less than the amount paid for sales tax, there would be over a thousand plaintiffs (per year) for the Class, rendering joinder impossible, not merely impractical.

41.      When considered over the course of a number of years, the Class is even more numerous.

## **COMMONALITY AND TYPICALITY**

42.      Each class member has been damaged by the same conduct, in the same way: Carter's' failure to provide a full refund of the amount the class member paid.

43.     There are common questions of fact and law that predominate across the Class, including: (1) the formation and terms of the contract based on Carter's nationwide Carter's return policies; (2) whether Carter's promised class members a refund of all amounts paid for merchandise; (3) whether Carter's breached its contract with purchasers by refunding less than the amount paid by failing to include sales tax; (4) whether the Class members have sustained damages; and (5) the proper measure of their damages.

44.     The Carter's return policies provide identical rights to full refunds of the amount paid.

45.     Because Carter's respective return policies, pricing, and conduct is uniform across its stores nationwide, the legal issues will be common across the Class.  The common questions of fact and law will have common answers throughout the Class.

46.     For the same reason, the defenses will be common across the Class.

47.     The Plaintiffs have the same claims as the Class members, making their claims typical of the class.

48.     Common proof of the contract, its terms, and breach, are applicable to the plaintiffs and the class.

## ADEQUACY OF REPRESENTATION

49.     Plaintiffs understand the claims and are able to represent the interests of the Class, and their interests are aligned with that of the Class.   Additionally, the interests of Plaintiffs are not antagonistic to the Class.

50.    The Plaintiffs are part of the Class (having purchased products from, and returned them to, Carter's stores, receiving less than the amount paid in return), and Plaintiffs have the same interest and suffered the same injury as the Class members (recovery of the sales tax, that should have been refunded and any other appropriate relief stemming from the breach).

51.    Plaintiffs have Plaintiff has retained competent counsel, experienced in complex class action cases and similar consumer litigation.

52.    Counsel and the Class representatives will adequately and diligently pursue the interests of the Class.

## PREDOMINANCE

53.    Issues subject to generalized proof and applicable to the Class as a whole predominate over those issues that are subject to only individualized proof.

54.    The common questions of law and fact described above are the most significant questions for the class action, the resolution of which will resolve the claims other than calculating damages for each Class member.

55.    Damages for Class members will be easily calculated through formulas, *e.g.*, subtracting the amount returned from the amount paid for a transaction.

56.    Carter's sales systems provide for the calculation of damages, and ascertaining which customers fall within the Class definition.

57.    There are no individualized inquiries required for the claims or defenses.

## SUPERIORITY

58.    A class action is the superior method of resolving this dispute.

59.     Plaintiffs allege a single course of wrongful conduct by Carter's, making the case particularly well-suited to class certification.

60.     There are no individual inquires required of Class members under a breach of contract analysis.

61.     Carter's' sales systems provide an efficient way to obtain information on transactions *en masse*, meaning class treatment would significantly reduce the discovery costs to all parties.

62.     Given the small value of individual damage per transaction (a fraction of the sale representing the difference between the respective sales tax applied), it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages.  Therefore, aggrieved persons will be without any effective redress unless they may employ the class-action device.

63.     Given the unlikelihood that many injured class members will discover, let alone attempt to vindicate, their claims, a class action is a superior method of resolving the claims.

64.     No other class actions of this nature are pending against this Defendant in Louisiana or any other state to Plaintiffs' knowledge.

65.     There are no parallel pending individual actions to Plaintiffs' knowledge.

## <u>AMALGAMATED BREACH OF CONTRACT CLAIM</u>

66.     Breach of contract claims across all 50 states consist of substantively identical standard elements, making a claim based on a single contract ideal for class certification.  <u>See, e.g.</u>, <u>Kleiner v. First Nat. Bank of Atlanta</u>, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("When viewed in

light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (citing Broad v. Rockwell Intern. Corp., 642 F.2d 929 (5th Cir.) (en banc), cert. denied, 454 U.S. 965 (1981) (breach of indenture agreement); Irving Trust Co. v. Nationwide Leisure Corp., 95 F.R.D. 51 (S.D.N.Y. 1982) (breach of contract for failure to provide charter tour services); Jennings Oil Co., Inc. v. Mobil Oil Corp., 80 F.R.D. 124 (S.D.N.Y.1978) (validity of general release provision of contract); Davis Cattle Co. v. Great Western Sugar Co., 393 F. Supp. 1165 (D. Colo. 1975) (breach of contract); Janicik v. Prudential Insurance Co. of America, , 451 A.2d 451 (Pa. Super. Ct. 1982) (interpretation of form insurance contract); Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn., 281 Or. 533, 577 P.2d 477 (1978) (form mortgage); Buchanan v. Brentwood Federal Savings and Loan Assn., 457 Pa. 135, 320 A.2d 117 (1974) (form contract); Perlman v. First National Bank of Chicago, 15 Ill. App. 3d 784, 305 N.E.2d 236 (1st Dist. 1973) (360-day year method of computing interest); Georgia Investment Co. v. Norman, 229 Ga. 160, 190 S.E.2d 48 (1972) (validity of loan note); Silverstein v. Shadow Lawn Sav. & Loan Assn, 51 N.J. 30, 237 A.2d 474 (1968) (breach of contract based on method of calculating interest).

67.    Each state requires the following elements to prove a breach of contract claim: (1) a contract; (2) Plaintiff's performance; (3) Defendant's breach of the contract; and (4) damages proximately caused by the defendant's breach.

See, e.g.:

a.    [AL] State Farm Fire & Casualty Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999) ("The elements of a breach of contract claim under Alabama law are as follows: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.")

b.    [AK] Fleenor v. Church, 681 P.2d 1351, 1354 & n.4 (Alaska 1984) (noting that although "courts of equity do not require literal performance of all acts required to be done under the contract" in order for equitable relief to be granted, "under

ordinary circumstances, [plaintiff] would be barred from enforcing [defendant's] duty to perform, since he had not fulfilled his own concurrent contractual obligation.") (citing Navato v. Sletten, 560 F.2d 340, 346 (8th Cir. 1977) ("It is axiomatic that before a party can recover upon a contract, he must show his own performance or his own tender thereof."); Native Village of Stevens v. Alaska Management & Planning, 757 P.2d 32, 42-43 (Alaska 1988) (requiring plaintiff to prove existence of valid, enforceable contract in order to maintain action for breach of contract); Winn v. Mannhalter, 708 P.2d 444, 450 (Alaska 1985) (Damages resulting from the breach a required element in an action for breach of contract.)

c.    [AZ] Graham v. Asbury, 112 Ariz. 184, 185 (1975) ("To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages.");

d.    [AR] Ultracuts Ltd v. Wal-Mart Stores, Inc., 343 Ark. 224, 231-32 (2000) ("A person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages.");

e.    [CA] Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968) ("[T]he essential elements of . . . a cause of action [for breach of contract are]: (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach, and (4) the resulting damages to plaintiff.");

f.    [CO] Western Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992) ("It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract just prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff.") (citations omitted);

g.    [CT] Chem-Tek, Inc. v. General Motors Corp., 816 F. Supp. 123, 131 (D.Conn. 1993), ("In pleading an action for breach of contract, plaintiff must plead: 1) the existence of a contract or agreement; 2) the defendant's breach of the contract or agreement; and 3) damages resulting from the breach.") (applying Connecticut law);

h.    [DE] Winston v. Mandor, 710 A.2d835, 840 (Del.Chan. 1997) (For a breach of contract claim, "plaintiff must demonstrate the existence of the contract, breach thereof and resultant damage.");

i.    [DC]   Proctor v. Ward, 83 A.2d 281, 282 (D.C. 1951) (complaint stated the elements of breach of contract where plaintiff alleged: (1) existence of a contract; (2) performance by plaintiff; (3) failure to perform by defendant; and (4) damages caused by the breach);

j.    [FL] Abbott Lab., Inc. v. GE Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000) ("The elements of a breach of contract action are: (1) a valid contract; (2) a material breach, and (3) damages.");

k.      [GA] <u>Budget Rent-A-Car v. Webb</u>, 220 Ga. App. 278, 279 (1996) ("The elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken.");

l.      [HI] <u>Uyemura v. Wick</u>, 57 Haw. 102, 110-11 (1976) (contract, breach, damages, but nominal damages presumed);

m.      [ID] <u>Mosell Equities, LLC v. Berryhill & Co., Inc.</u>, 154 Idaho 269, 278 (Idaho 2013) ("The court cannot grant a judgment as to one element of a claim for relief. The elements for a claim for breach of contract are:  a) the existence of the contract; b) the breach of the contract; c) the breach caused damages; and d) the amount of those damages." (citing O'Dell v. Basabe, 119 Idaho 796, 813 (1991);

n.      [IL] <u>Henderson-Smith & Assoc. v. Nahamani Family Serv. Ctr.</u>, 323 Ill. App. 3d 15, 27 (2001) ("The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.")

o.      [IN] <u>Rogier v. American Testing & Eng'g Corp.</u>, 734 N.E.2d 606, 614 (Ind. Ct.App. 2000) ("The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages.");

p.      [IA] <u>Berryhill v. Hatt</u>, 428 N.W.2d 647, 652 (Iowa 1988) ("[T]he following elements are necessary [] to show a breach of contract:  (1) the existence of the contract; (2) the terms and conditions of the contract; (3) that the buyers have performed all the terms and conditions of the contract required of them to now require the [defendant] to perform; (4) that the contract was breached in some particular way; and (5) that the [plaintiff] has suffered damages.").

q.      [KS] <u>Commercial Credit Corp. v. Harris</u>, 212 Kan. 310, 313 (1973) ("In an action based on a contract, the burden of proof is on the plaintiff to show:  (1) execution and existence of the contract alleged in the petition; (2) sufficient consideration to support the contract; (3) performance or willingness to perform in compliance with the contract alleged; and (4) the defendant's breach insofar as such matters are in issue.").

r.      [KY] <u>Peters Branch Int'l Shoe Co. v. Jones,</u> 247 Ky. 193, 197 (1933) ("In order to constitute a cause of action in a case like this [for breach of contract], the pleading must not only state the contract and its breach, but must allege the damage sustained by reason of the breach.");

s.      [LA] <u>Lester Frame v. Comeaux</u>, 735 So.2d 753, 756 (La. App. 1999) (contract, breach, damages); <u>Henderson v. Ayo</u>, 96 So.3d 641 (La. App. 2012) (A contract is the law between the parties, and the parties will be held to full performance in good faith of the obligations flowing from the contract.  La. Civ. Code art. 1983);

t.      [ME] <u>Anderson v. Eastern Coupling Co.</u>, 108 Me. 374, 376 (1911) (ruling that plaintiff properly pled a cause of action for breach of contract upon showing (1) the existence of a contract; (2) plaintiff's performance, (3) defendant's breach and (4) damages);

u.  [MD] Taylor v. Nationsbank, N.A., 365 Md. 166, 175 (Md. App. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation…It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages.");

v.  [MA] Yellin v. Hyman, P.C. v. Ellis & Assocs., 2001 Mass. Super LEXIS 232, *10 (2001) ("To succeed in a breach of contract action, a claimant must demonstrate (1) that the parties reached a valid and binding agreement, (2) that one party breached the terms of the agreement, and (3) that the other party suffered damages from the breach.");

w.  [MI] Malcolm MacDowell & Associates, Inc. v. Ecorse-Lincoln Park Bank, 325 Mich. 591, 598 (1949) ("[P]laintiff did declare on an express agreement, alleging performance thereof by itself and breach by defendant with resultant damage to plaintiff.  Those allegations, standing alone, were sufficient, if proved, to support a judgment for plaintiff.");

x.  [MN] Industrial Rubber Applicators, Inc. v. Eaton Metal Prods. Co., 285 Minn. 511, 513 (1969) ("In an action on a contract such as this the elements would be (a) the formation of the contract; (b) performance by plaintiff of any conditions precedent to his right to demand performance by defendant; and (c) a breach of the contract by defendant.").

y.  [MS] Frierson v. Delta Outdoors, Inc., 794 So. 2d 220, 226 (Miss. 2001) (requiring, for a breach-of-contract action, a showing of (1) a valid contract, (2) breach of that contract, and (3) damages);

z.  [MO] White v. Pruiett, 39 S.W. 3d 857, 861-62 (Mo. App. 2001) ("In order to make a submissible case of breach of contract, contractor was required to establish:  (1) the existence of a valid contract; (2) the rights and obligations of the respective parties; (3) a breach; and (4) damages");

aa.  [MT] Tobacco River Lumber Co., Inc. v. Yoppe, 176 Mont. 267, 270 (1978) ("Here, plaintiff set out the relevant terms of the contract in its complaint and alleged that defendants [breached].  Plaintiff also set out three specific ways in which it was damaged by the alleged breach and had a prayer of damage for each claim.  We do not feel that more is required to state a claim [for breach of contract].")

bb.  [NE] Vowers & Sons, Inc. v. Strasheim, 254 Neb. 506, 516-17 (1998) ("[I]n order to recover for breach of contract a plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that actuate the defendant's duty.");

cc.  [NV] Orr Water Ditch Co. v. Reno Water Co., 19 Nev. 60, 65 (1885) (holding that the facts alleged – contract, breach, and damages – constituted a cause of action for breach of contract0;

18

dd.    [NH] <u>Bronstein v. GZA Geoenvironmental, Inc.</u>, 140 N.H. 253, 255 (1995) ("[A] cause of action...arises once all the necessary elements are present… In the case of a contract action, it would be when the breach occurs.  A breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract.");

ee.    [NJ] <u>John Hancock Mut. Life Ins. Co. v. King</u>, 1997 WL 373512, *3 (D.N.J. 1997) (applying New Jersey law) ("John Hancock has pleaded the existence of a [contract]. . . . In addition, John Hancock has pleaded that King breached particular provisions of the [agreement], and that John Hancock has suffered damages as a result of King's activities. . . . These pleadings are . . . sufficient to establish John Hancock's claim for breach of contract under New Jersey [law].");

ff.    [NM] <u>Camino Real Mobile Home Park Partnership v. McCarson</u>, 119 N.M. 436, 445 (1995) ("Once a party has established a cause of action for breach of contract by showing the existence of a contract, breach thereof, causation, and actual damage, he or she may be awarded nominal damages and costs, even when failing to establish the amount of compensatory damages.");

gg.    [NY] <u>WorldCom, Inc. v. Sandoval</u>, 701 NY.S.2d 834, 836 (N.Y. Sup. Ct. 1999) ("An action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.");

hh.    [NC] <u>Claggett v. Wake Forest Univ.</u>, 126 N.C. App. 602, 608 (1997) ("To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach.");

ii.    [ND] <u>Jones v. Grady</u>, 62 N.D. 312, 318, 243 N.W. 743, 745 (1932) (finding that a complaint properly states a cause of action for breach of contract where it "recites facts showing the contract, performance by the plaintiffs, breach by the defendants, and concludes with a general allegation of damages.");

jj.    [OH] <u>Garofalo v. Chicago Title Ins. Co.</u>, 104 Ohio App. 3d 95, 661 N.E. 2d 218, 226 (1995) ("Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non breaching party suffered damages as a result of the breach.");

kk.    [OK] <u>Digital Design Group, Inc. v. Information Builders, Inc.</u>, 24 P.3d 834, 843 (Okla. 2001) ("In order to recover on its breach of contract theory, [plaintiff] needed to prove:  1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach.");

ll.    [OR] <u>Slover v. Oregon State Bd. Of Clinical Social Workers</u>, 144 Or. App. 565. 570 (1996) ("To state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.");

mm.  [PA] <u>CoreStates Bank N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. 1999) (To establish a claim for breach of contract, a claimant must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.");

nn.  [RI] <u>Konoff v. Lantini</u>, 111 R.I. 691, 696, 306 A.2d 176, 179 (1973) (contract, breach, damages);

oo.  [SC] <u>Fuller v. Eastern Fire & Casualty Ins. Co.</u>, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962) ("This being an action for breach of contract, the burden was upon the [insured] to prove the contract, its breach, and the damages caused by such breach.");

pp.  [SD] <u>McKie v. Huntley</u>, 620 N.W.2d 599, 603 (S.D. 2000) ("An action for breach of contract requires proof of an enforceable promise, its breach, and damages.");

qq.  [TN] <u>Tedder v. Raskin</u>, 728 S.W.2d 343, 351 (Tenn App. 1987) (Under the law of Tennessee, the essential elements of a breach of contract claim are the existence of a contract, breach of that contract, and injuries or damages proximately caused by the breach.");

rr.  [TX] <u>Frost Nat'l Bank v. Burge</u>, 29 S.W.3d 580, 598 (Tex.Civ.App. 14th Dist. 2000) ("The essential elements in a breach of contract claim are as follows:  (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.")'

ss.  [UT] <u>Bair v. Axiom Design, LLC.</u>, 20 P.3d 388, 392 (Utah 2001) ("The elements of a prima facie case for breach of contract are (1) a contract; (2) performance by the party seeking recovery; (3) breach of contract by the other party; and (4) damages.");

tt.  [VT] <u>Lapoint v. Dumont Const. Co.</u>, 128 Vt. 8, 10, 258 A.2d 570 (1969) ("In the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach… A contract includes not only what is expressly stated therein but also what is necessarily implied from the language used.");

uu.  [VA] <u>Westminster Investing Corp. v. Lamps Unlimited, Inc.</u>, 237 Va. 543, 379 S.E.2d 316 (Va. 1989) ("The elements of a breach of contract claim under Virginia law are (1) a legal obligation of a defendant to a plaintiff; (2) a violation or breach of that duty; and (3) consequential injury or damage to the plaintiff.");

vv.  [WA] <u>Northwest Indep. Forsest Mfrs. V. Dep't of Labor & Indus.</u>, 78 Wash. App. 707, 712 (1995) ("A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant.");

ww.  [WV] <u>Mason County Bd. Of Educ. V. State Superintendent of Sch.</u>, 170 W. Va. 632, 636, 295 S.E.2d 719, 724 (1982) (in a case seeking damages for alleged

breach of contract, the plaintiff may rest his case upon proof of a valid contract and its breach);

xx.  [WI] <u>Discount Fabric House, Inc. v. Wisconsin Tel. Co</u>, 117 Wis. 2d 587, 603, 345 N.W.2d 417, 425 (1984) (recognizing the elements of a breach of contract action as a contract, breach of the contract and damages); and

yy.  [WY] <u>Reynolds v. Tice</u>, 595 P.2d 1318, 1323 (1979) ("The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages… This is often stated, as the court here instructed, as failure without legal excuse to perform any promise which forms the whole or part of a contract.").

**<u>FIRST CAUSE OF ACTION</u>**
**<u>(BREACH OF CONTRACT)</u>**

68.  Plaintiffs incorporate all other paragraphs of this Complaint as if fully rewritten herein.

69.  Plaintiffs had a contract with Carter's under which they had a set period of time (up to 90 days for Carter's, depending on the type of product) to reject the product (i.e., "return" it) and receive a full refund or exchange, provided they had a receipt and the original packaging.

70.  Plaintiffs exercised the right to return products within the time period applicable for that type of product.

71.  Either Plaintiffs had the receipt and original packaging, or Carter's accepted performance without same, waiving such requirements.

72.  Defendant breached the contract by refunding less than the purchase amount the Plaintiffs paid for the products.

73.  As a result of the Defendants breach, Plaintiffs suffered harm in the amount of the purchase amount paid for the product that was not refunded by Carter's.

74.     WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request relief as follows:

a.     An order certifying the proposed Class, and appointing Plaintiffs and their counsel of record to represent the proposed Class;

b.     Judgment in favor of Plaintiffs and the proposed Class and against Carter's in the amount of the actual damages of Plaintiffs and the proposed Class;

c.     An order awarding attorneys' fees and costs of suit;

d.     Pre-judgment and post-judgment interest; and

e.     Such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all claims so triable.

Dated:  November 28, 2017.                    Respectfully submitted,

O'BELL LAW FIRM, LLC

By:_____*Eric J. O'Bell*_____
Eric J. O'Bell
Louisiana Bar No. 26693
3500 North Hullen Street
Metairie, LA 70002
*ejo@obelllawfirm.com*
Tel.: (504) 456-8677
Fax: (504) 456-8653

Of Counsel:
Albert M. Myers
Al Myers Law, LLC
P.O. Box 1662

Decatur, GA 30031
*almyers@almyerslaw.com*
Tel.: (404) 931-7735
Fax: (504) 456-8653

*Attorneys for Plaintiffs and Proposed Class*